UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RAY FRANCE,<br><br>    Plaintiff,<br><br>    v.<br><br>THOMAS D. ALLMAN, et al.,<br><br>    Defendants. | Case No. 15-cv-04078-JSC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 22 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights complaint under 42 U.S.C. § 1983 against officials at the Mendocino County Jail ("MCJ"), where he was formerly incarcerated. The case was assigned to Magistrate Judge Grewal, who ordered the amended complaint served upon jail officials Sheriff Thomas D. Allman, Captain Pearce, Sergeant Studor, and Lieutenant Bednarth. Defendants filed a motion for summary judgment.[1] The case was then reassigned to the undersigned judge. Although given an opportunity to file an opposition and cautioned about the risks of failing to do so, Plaintiff has not opposed the motion. For the reasons discussed below, the motion for summary judgment is GRANTED.

## DISCUSSION

In his amended complaint, Plaintiff alleges that he was placed in an unsanitary safety cell on several occasions, that he was housed in an isolated cell on administrative segregation without justification, and that he was denied religious meals. (ECF No. 8.) After reviewing the amended complaint, the Court found that, when liberally construed, it stated cognizable claims for the violation of his constitutional rights, and a violation of his right to freely exercise his religion.

---

[1] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. (ECF Nos. 1, 22.)

(ECF No. 9 at 2.) Defendants move for summary judgment on the grounds that there is no triable issue of fact, and based upon the evidence they are entitled to judgment as a matter of law.

Summary judgment is proper where there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

As noted, Plaintiff has not opposed the summary judgment motion, and he has not submitted a declaration or other evidence in support of his claims. In addition, his amended complaint is not verified, which means that the factual allegations therein may not be considered evidence in opposition to the summary judgment motion. *Cf. Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an opposing affidavit under Rule 56). While a district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition, *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994), an unopposed motion for summary judgment should be granted if the movant's papers are sufficient by themselves to show the absence of a dispute of material fact and that they are entitled to judgment as a matter of law, *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001). Here, Defendants support their motion with declarations and a request for judicial notice of documents filed in state court. (ECF Nos. 23-28.) Accordingly, the Court examines whether Defendants' papers are sufficient to support summary judgment on Plaintiff's claims.

    1.    <u>Safety Cell and Administrative Segregation</u>

Plaintiff claims that he received "cruel and unusual punishment" because on several occasions he was put into safety cells with unsanitary conditions, and also because he was housed

2

in the MCJ administrative segregation unit without justification. In order to address this claim, it must be determined whether Plaintiff was a pretrial detainee or had been convicted of criminal charges because inmates who have not yet been convicted may bring suit about the conditions of their confinement under the Fourteenth Amendment's Due Process Clause, but if they have been convicted then such claims fall under the Eighth Amendment's Cruel and Unusual Punishment Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc). Defendants' evidence shows that Plaintiff was in the MCJ between April 2014 and April 2016, and he was convicted of state court charges in May 2015 and January 2016. (Pearce Decl. ¶ 3, Exh. A.) Plaintiff was placed in safety cells and housed in administrative segregation both before and after he was convicted. (Bednar Decl. ¶ 9 Exh. C; Pearce Decl. ¶¶ 6-9.) Thus, his claim challenging the constitutionality of his placement in a safety cell and in administrative segregation must be analyzed under both the Due Process Clause and the Eighth Amendment.

        a.     <u>Due Process Clause</u>

To determine whether particular restrictions and conditions accompanying pretrial detention amount to a violation of the Due Process Clause, the Court first looks to whether the disability imposed is for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. *Id.* at 538. Absent a showing of an express intent to punish, whether a restriction amounts to punishment will generally turn on whether there is an alternative, rational purpose for the restriction, and whether the restriction then appears excessive in relation to that purpose. *Id.* For example, states must be able to take steps to maintain security and order at pretrial facilities, and restraints that are reasonably related to a facility's interest in maintaining jail security are not, without more, unconstitutional punishment. *Id.* at 540.

Defendants state that jail staff did not do so to punish him, but rather as a safety precaution. Plaintiff was placed in a safety cell on five occasions, following episodes in which he assaulted staff members, cursed at them, threatened to kill them and their family members, and flooded his cell. (Bednar Decl. ¶ 9 & Exh. C.) Defendants' evidence also shows that Plaintiff had a history of dangerous behavior at the jail, including having sharpened pieces of metal and wire in

his cell, assaults and threats against staff and other inmates (including during booking), and he had identified himself as a "skin head" and an adherent of "white power." (*See* Pearce Decl. ¶ 4 & Exhs. D, G, & F at 9-14, 31-41, 613-14.) His placements in the safety cell were also temporary --- lasting one, three, six, nine and 12 hours, respectively, a supervisor reviewed each decision to place him in the cell, and on each occasion he was frequently monitored by mental and medical health employees. (Bednar Decl. at ¶ 9 & Exh. C.) He complained about the cleanliness of the cell on one occasion, and in response jail staff investigated and determined that the cell had been cleaned before Plaintiff was placed in it. (*Id.* at ¶ 11.) This evidence shows that he was placed in the safety cells for the non-punitive purpose of ensuring the safety of staff, other inmates, and himself at the MCJ, and the temporary nature of the placements and the precautions taken them from being excessive in relation to that purpose. Accordingly, Defendants' evidence establishes that Plaintiff's rights under the Due Process Clause were not violated by his placement in the safety cell.

Defendants' evidence also establishes that his administrative segregation did not violate the Due Process Clause. When Plaintiff arrived at the MCJ, he was classified as a maximum security level three ("Max 3") inmate, and consequently housed in the MCJ administrative segregation unit. (Pearce Decl. ¶ 4.) The reason he was so classified was he had previously served jail and prison terms, his prior and current criminal charges involved violence, he was combative during booking, and as described above he identified himself with white supremacist beliefs. (*Id.* at ¶ 5.) His classification status was reviewed very frequently (40 times in approximately two years at the jail) and even lowered on several occasions. (*Id.*) However, each time his classification was lowered it was returned to Max 3 because he engaged in the dangerous behavior described above --- assaults on staff and other inmates, possession of weapons in his cell, threats to kill other inmates and MSJ staff and their family --- and also expressed both an intention to control other inmates and racist views against African Americans. (*Id.* ¶ 6 & Exhs. D, F; Saye Decl. ¶¶ 6-9 & Exh. C.) This evidence is sufficient to show that Plaintiff was placed in administrative segregation not to punish him, but to preserve the safety and security of the MCJ by separating him from the staff and other inmates whom he expressed animosity towards and

4

explicitly threatened. Segregating him was not excessive in relation to the need to prevent him from hurting others insofar as his housing in the administrative segregation unit was reviewed at what amounts to an average of every two to three weeks, was revoked several times and then reinstated only because of Plaintiff's further dangerous actions. Defendants' evidence showing the non-punitive justification for Plaintiff's administrative segregation establishes that, like his placement in the safety cell, his administrative segregation did not violate the Due Process Clause.

### b. Eighth Amendment

Because Plaintiff's safety cell placements and administrative segregation continued after he was convicted of criminal charges, his claim that those actions violated his constitutional rights must also be analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Bell*, 441 U.S. at 535. An inmate's Eighth Amendment rights are violated when officials are deliberately indifferent to a sufficiently serious deprivation of his or her basic needs. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Temporary placement in safety cells is not a sufficiently serious deprivation to violate the Eighth Amendment. *See Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir.) (temporary placement in safety cell that was dirty and smelled bad did not constitute sufficiently serious deprivation to violate the Eighth Amendment), *amended*, 75 F.3d 448 (9th Cir. 1995). Plaintiff's placements in the safety cell --- as described by Defendants' evidence and detailed above --- were temporary, monitored by health care professionals, reviewed by supervisors, and triggered by his dangerous behavior. Under such circumstances, they were not sufficiently serious to amount to cruel and unusual punishment in violation of the Eighth Amendment.

Plaintiff's administrative segregation also does not violate the Eighth Amendment because placement in administrative segregation, even for an indeterminate term, does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *See id.* at 1315-16 (9th Cir. 1995) (administrative segregation in which inmate placed in isolation without contact with any other inmate, either for exercise, day room access or otherwise, not cruel and unusual punishment); *see also Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement

ordinarily contemplated by a prison sentence."). Accordingly, the evidence presented by Defendants shows no triable issue of fact relating to Plaintiff's claim that his placement in a safety cell and administrative segregation violated his Eighth Amendment rights, and Defendants are entitled to judgment as a matter of law on this claim.

        2.        Exercise of Religion

Plaintiff claims that Defendants violated his First Amendment right to freely exercise his religious beliefs in Odinism by denying his request for religious meals. To establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). The sincerity test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines whether the Free Exercise Clause applies. *Id.*.

Defendants' evidence shows that during his incarceration, Plaintiff requested Odinist literature, a medallion, and meals. (Bednar Decl. pp 4 & Exh. A.) MCJ officials gave him literature and looked for his medallion among his stored property, but it was not there. (*Id.* Exh. A.) These accommodations were easy to provide, but Defendant Bednar denied his request for meals (which were more difficult to provide). (*Id.* at ¶¶ 4-6.) Bednar concluded that Plaintiff did not hold sincere beliefs in Odinism but was just using it as a pretext for his white supremacist tattoos and views in order to try to lower his classification and get out of administrative segregation. (*Id.* at ¶ 6.) This conclusion was based upon a number of facts Bednar discovered after reviewing Plaintiff's records and speaking to him: (1) Plaintiff did not claim Odinism when booked into MCJ and waited three months before making any requests related to Odinism; (2) he had limited knowledge of Odinism and the nature of its diet; (3) he claimed to have an Odinist medallion in his property, but it was not there; (4) Plaintiff had previously expressed white supremacist views and his tattoos reflected those views; and (5) he had been informed that those views and tattoos were among the reasons for his classification. (*Id.* at ¶ 6 & Exh.A.) Plaintiff's lack of knowledge about Odinism and its diet, his willingness to eat non-religious meals for at least three months, and the possibility of a mixed motive for professing Odinist beliefs all suggest that he did not sincerely believe in the need to adhere to an Odinist diet. As there is no evidence to

6

the contrary, there is no triable factual issue relating to Plaintiff's claim that the denial of Odinist meals violated his First Amendment rights, and based upon the evidence presented in Defendants' papers, they are entitled to judgment as a matter of law on this claim.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (dkt. 19) is GRANTED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: December 27, 2016

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[2] For the same reason, his claim also fails under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, which also requires that a prisoner's request for an accommodation of a religious practice be sincerely based on a religious belief and not some other motivation. *See Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015).